The next item on our calendar is Lloyd George Morgan v. James Dzurenda, Jr. v. others. Good morning, Your Honors. May it please the Court, Sherwin Yoder from Carmody, Torrance, Sandeck, and Hennessy in Waterbury, Connecticut. I'm here on behalf of the plaintiff appellant in this case, Lloyd George Morgan, Jr., who's actually seated in the well of the court, in the audience of the court. Your Honors, this case is about the failure of the defendants to protect Mr. Morgan from a beating at the hands of an inmate who had been constantly, repeatedly threatening him for being a quote-unquote homo and a quote-unquote snitch. And Mr. Morgan then repeatedly warning the defendants, both in writing and with in-person interactions, concerning his fears for his safety and the... I think the evidence is different as to each one, and I guess first, do you agree that the claims as to the 21 that are not mentioned in your papers are abandoned? With respect to the federal, the Eighth Amendment claim that's before the court, yes, those defendants are not an issue. It is just the four defendants discussed in the brief, Your Honor. The district court found that Mr. Morgan did not introduce evidence specifying any prison policies related to protective housing. Why wasn't that done? Did you represent him below? This is summary judgment, right? That's right, Your Honor. I was appointed pro bono at the close after discovery after three dispositive motions. Was he pro se during discovery? Yes, Your Honor. He was pro se during discovery. We were permitted some brief discovery. I believe prison procedures are in the record in the appendix. And the reason that the court found that there was no evidence supporting the deliberate indifference claim is because the court incorrectly applied personal involvement law and the standard for deliberate indifference. We have several different things here. We have first the question of the individual policeman, I mean corrections officers, who did not take action after your client said something. And I'm rather surprised that you didn't cite the Hayes case, which was a decision by Judge Meskel with Judge Winter and Judge Van Graffelen on it, which on situations very like yours. But there was more time, two days, between the warning and when they didn't do anything. The other side cites the Hines case, where during a fistfight there was no time. In this case, there were several hours between the time that these particular people were warned and no steps were taken. And whether that is enough to get to a jury on deliberate indifference. That's one side. The separate thing is whether the warden and Gooding were directly involved, were sufficiently involved. And there we have the question of if you just send letters to busy people, is that enough to make them involved? But here there was evidence of — He spoke to the warden personally, didn't he? Yes, Your Honor. That's correct. And that the question is, does the fact that the words used would not be enough to bring about a case, is that relevant to the question of whether they were informed? And the district court could be argued to have used what is enough to bring a case of deliberate indifference to say they weren't warned, which is a completely different issue. Right, Your Honor. With respect to the supervisory officials, Defendants Gotting and Chaptaline, the evidence is clear that in both cases Mr. Morgan had personal interactions. And according — if you credit his testimony, they acknowledged receiving the letters. They acknowledged that they had. They admitted receiving the letters. And, of course, it is very important to remember what's the content of those letters. That's really — Well, if they're received, you see, I can understand the position that the defense takes and that the district judge took, that you cannot say there is involvement when simply letters are sent to a warden or to somebody who is so busy that he may never even see them. But here you claim there was direct evidence that they saw them and reacted and then didn't do anything. So that for the question of involvement, you say that's enough. It isn't just sending a letter. That's right, Your Honor. In the cases, actually, that the court cited where there was no personal involvement found, one of two situations are going on there. First, either the prison official took appropriate action and delegated to a subordinate who did something with the letter, or there wasn't enough evidence in the record about the contents of the letter that would, in the words in Your Honor's decision in Colon, give the court — give a reasonable jury something to hang its hat on with respect to whether it was reasonable to expect that the prison official would have read that letter and the contents would have prompted the prison official to investigate or take some action. In this case, we have ample evidence of what was in the letter, the threat to snap his neck for being a snitch and a homo, the constant threats, the warnings, the fact that the prison intelligence itself is tracking inmate Rodriguez for gang-affiliated activity with the Los Salidos gang. All of that. A reasonable juror could take that in and surmise that and infer reasonably that Gotting and Chaptalain each were personally involved. What about the individual corrections officers? So the individual corrections officers, as Your Honor pointed out, there's less in terms of documentary evidence, but we certainly have to credit Mr. Morgan's own testimony that he spoke with each of them at the beginning of their shift, and he warned them about his fears about being out in recreation and the threats that had been made, which would include all of those statements. How much time was there for them to take action to protect him? Was there adequate time for them to take reasonable action to protect him? Your Honor, the record indicates, if I'm not mistaken, that it was a question of hours, that they came on their shift sometime in the afternoon and sometime after 8 p.m. or 8.15 p.m. There was recreation time, and that's when the assault occurred. That would be adequate time for them to be able to take some sort of action, either keep Mr. Rodriguez in his cell or take some other action to supervise more closely the shower or the recreation areas. Your Honors, the other point is the de minimis acts, application of the First Amendment de minimis acts standard. Deliberate indifference requires actual awareness, right? So as to Officers Maldonado and Lindsey, based on the conversation, you know, hours before the incident, is that enough to satisfy the standard? Yes, Your Honor. So Your Honor is referring to the standard of subjective awareness in addition to objective awareness. So it's not enough for a jury to be able to say, well, a reasonable person would have done X, Y, Z in that situation. But there is a fact issue here in that we have an environment that has been testified to by Mr. Morgan, and a reasonable juror could hear his statements about what they heard. And under Farmer v. Brennan, we know that although you can conclude as a matter of fact that something was obvious and, therefore, they subjectively understood, a juror could reasonably find, could reasonably infer that, in fact, because the situation showed an obvious danger, that, in fact, those individual defendants perceived the danger. So in your view, one oral communication relaying a threat is enough to get you to a trial where a jury could infer that conclusion? With respect to those two defendants, yes, Your Honor. I believe my time. Yes, and you have reserved two minutes for rebuttal, so we'll hear from the government. May it please the Court, Assistant Attorney General Zenobia Graham-Daze, I'm here on behalf of all of the appellees. As it relates to Correctional Officer Lindsey, there is no evidence in the record that would support he was actually present. We have an affidavit from him. We have an incident report. He is not documented anywhere in the record. We're asking that that decision made by Judge Bolden be affirmed. As it relates to Correctional Officer Maldonado, based on the record, Mr. Morgan approached her, told her that he had been assaulted. She listened to him. She went to her supervisor. She initiated an investigation. She placed Mr. Morgan in the restrictive housing unit. She did not subject Mr. Morgan to deliberate indifference. She did what she was supposed to do. As it relates to- What did she do during the two hours between the time that Mr. Morgan said, I am in terrible danger, and the time that he was assaulted? She was doing her job, and she was maintaining- Well, I understand that, but isn't their job to protect people? I mean, what we have here is, does the state protect somebody who has turned state evidence? Yes. That's the real question. I mean, do we want the state to let people who have turned state evidence get beaten up by others or not? That's a pretty dramatic thing. Where somebody does that, if we don't do something to protect them, people are not going to turn state evidence. Your Honor, there's nothing in the record that shows that Mr. Morgan turned state evidence. What I'd like to do is bring your attention to A105 in the record. A105, Mr. Morgan says, I go to the shower. I see inmate Rodriguez, this inmate that I'm afraid of, this inmate that I've been complaining about. And I see him in the shower. And instead of retreating, I go forward into the shower. Into the shower. And so, based on A105, Mr. Morgan's own comment, there is no reason why these defendants, Captain Godding and Warden Chaptolaine, are- You don't deny that they were told of his fears. They were told by him to the warden and to Godding, right? They admitted. Your Honor, I have to concede for purposes of a motion for summary judgment. I have to acknowledge that there are no material facts in dispute. And based on that, I am saying that what Mr. Morgan has provided is not enough. Mr. Morgan says that on November 8, 2013, I arrived at this facility. Six days later, I complained for the first time. And instead of saying, move me, I'm saying, I just got here. Move inmate Rodriguez. That's what he says. That's what he says on November- All he was asking for was protection. Mr. Morgan was asking to have the control and authority to determine who should be housed where. Mr. Morgan never asked to be moved. The record- Protected from this other inmate who frightened him. Who threatened him. If Mr. Morgan felt that he was being threatened, he could have asked to be moved himself. The record does not demonstrate that Mr. Morgan- Does he have to determine what remedy he gets? No, he doesn't have to determine what remedy he gets. But the Constitution says that an inmate does not have the legal authority to decide where they're housed. All he wanted was protection. If he wanted to have protection, he could have asked to be moved himself. Between November 8th when he arrived and January 5th when this incident happened, he never asked to be moved. He never filed a grievance. The only thing he did was file an inmate request. One, six days after, they observed these two. They observed these two for six weeks. Nothing happened during the six-week period. It is our position that Mr. Morgan has not satisfied his legal burden. Does the record reflect that anything was done in response to the inmate request forms? Anything. It is our position that the record does reflect that the captain and the warden toured the unit. The record also reflects that from November 8th- A response in as a reaction to receipts of the letters? No, as part of their normal job functions. As part of their normal job functions. We have a warden that's been at Osborne Correctional Facility for a substantial period of time. This is a facility that has 1,900 inmates. They are monitoring. They are looking. They are observing. We have different questions. The district court dismissed the warden and Mr. Gooding on the ground that they were not involved. They didn't dismiss them on the ground that there wasn't deliberate indifference. The ground was they were not involved. And my question is, when they reacted to the letters and to the verbal as they did, isn't that enough to show that they were involved? When Gooding says a thing about being a snitch and so on, isn't that enough to show that they're involved? I'm not saying anything about the question of whether that was deliberate indifference, but that isn't what the district judge went on with respect to those two. He said they weren't involved. And I'm perfectly willing to say that a letter sent to busy people is not enough to establish involvement, but I'm wondering whether in this case there isn't enough to say these two people knew. I think the record demonstrates that there wasn't enough. What do you have to do but tell them? He would have to provide more specificity. He said he was afraid that he would be beaten up. Yes, I understand that that is what Mr. Morgan said. My clients admit they got his letters and they heard him. My client is saying that I've reviewed the inmate request. It is vague, it is insufficient, and it is not enough. And that's what the record says. I'd like to refer the court to ECF number 83-1, which is the affidavit of Warden Chap Delane. She's saying, I'm looking at this, I'm seeing this, and this is not enough. And I think that part of ---- Excuse me, not enough for what? Not enough for Mr. Morgan to get the right to decide that inmate Rodriguez needed to be moved. No, no. When we're talking about the warden and Mr. Gooding, the question is, is it enough to show that they were involved? Because that's what the district court, the district court decided on a broad notion that supervisory people, in order to be involved, have to have more notice than they got here. And I want to know what kind of notice is going to be enough to make them be involved. That's a separate question if then their involvement was such, assuming they were involved, to constitute deliberate indifference. But that we don't have any opinion by the district court at all on them, because the district court never reached that. They said they were not involved. And I'm asking, what is it that's needed to make them be involved when they got letters and they answered these letters? They never answered the letters. They never answered the letters. And I would like to say that the district court reopened discovery. That's at ECF number 1315. He reopened discovery to give opposing counsel the opportunity. There is nothing in the record that establishes that they were involved. It is our position that Mr. Morgan got there on November 8th. Six days later, he wrote his first inmate request. He followed up on December 2nd. But from November 8th to January 5th, they're observing these two inmates. They're in the same unit together. Mr. Morgan is not complaining. He's not saying, move me, move me, move me. He's saying, move inmate Rodriguez. Yes. And Mr. Morgan is alleging that. Can you explain to me. Yes. You keep coming back to the fact that he didn't ask to be moved himself, but he asked for Rodriguez to be moved at a certain point when he decided that Rodriguez was threatening to him. Why is it his burden to say what they should do? I mean, he says this guy is dangerous, move him. Why is it up to him to say move me instead? Why isn't that essentially the decision that the jail has to make? Your Honor, it's our position that. Why does he know what is the steps to be taken? What's available. The administrative remedies available. He could have filed a grievance. He could have said I wrote two inmate requests. They both were ignored. Move me. Move me. Move me. Mr. Morgan did not do that. What we're saying is the standard has not been satisfied. These individuals were not put on notice. When I. They were put on notice. Not sufficient enough to establish personal involvement pursuant to the standard that Your Honor has articulated in Cologne. They admit that he spoke to both of them. That is not enough. He wrote letters to them. That's not enough? Does he have to wait to be beaten up? He doesn't have to wait to be beaten up, but it's our position that every inmate on inmate assault does not rise to the level of a constitutional violation. What we're saying here is what Mr. Morgan provided to the court is not enough. We're saying that this decision is the right decision and it should not be disturbed. We have a judge that has appointed counsel for Mr. Morgan, reopened discovery for Mr. Morgan, and still we don't have enough. The trial court judge is a wonderful judge and looks to all sorts of things. No doubt about that. It is also the case that the trial judge was very worried about people who are busy and who are hearing for the first time about some things not being held liable. And the question is, was that very broad notion that people are not involved if they just hear for the same first time enough on the facts of this case, or does one have to look beyond that? Your Honor, we're saying that it is not enough. We're saying that the record demonstrates that this is just mere linkage in the chain of command. It is our position that despite the fact that Mr. Morgan had counsel, he didn't satisfy the legal burden. We're asking that the decision be affirmed. Thank you, counsel. Thank you. Mr. Yoder, you have two minutes. Thank you, Your Honors. Just briefly, if I may, the arguments that my colleague makes sounds more like it would be a persuasive argument at a jury trial where she can argue about the credibility of Mr. Morgan and the evidence that he's put forward. But that, of course, is not appropriate at this stage. What she's saying is that you didn't do enough to meet the standards that this circuit has articulated. And, Your Honor — Can you speak to that? Yes. I believe that there's been enough in the record that Mr. Morgan has satisfied the standards of personal involvement, as we see it in cases like Boone v. Elrod and other cases that I cited in my brief. And none of the cases that have been cited by either the district court or opposing counsel have changed that analysis for me. The statements that, for example, Defendant Gotting made in response to these pleas and warnings about Mr. Morgan's fears for his safety, like, stop being Lieutenant Columbo, learn to fight like a man. These are statements that fall short of, while it may be good advice, you know, recognizing the danger that's before Mr. Morgan. Those were Captain Gotting's statements, right? Those were Captain Gotting's? Those were Captain Gotting's statements. Were there any statements like that with respect to the other three defendants that we've been talking about? There's no statements like that in the record, Your Honor, only the absence of action in response to the very detailed warnings and complaints. The only thing you have about the two individual corrections officers is that a couple of hours before he was beaten up, he said, I'm in danger, and they didn't do anything. And what we have are two cases, Hines, where there was no time at all and we held no liability, and Hayes, which you don't cite, where there were a couple of days and where a very powerful panel of his court, Meskel, Winter, and Van Graffelen, said there is liability. And this is somewhere in between because there were a couple of hours. But that's the only thing we got. We don't have any statements. That's true, Your Honor, except with respect to Defendant Maldonado. The record reflects that she was dismissive of Mr. Morgan's situation after the event. The opposing counsel said she filed a report. She may have been dismissive to Mr. Morgan, but she filed a report. I think the point of talking about Mr. Morgan's perceptions in the moment is to go to the culpability of the mind of Ms. Maldonado in this sort of continued display of deliberate indifference. And Farmer v. Brennan actually ---- The question is whether we are to say when there is a complaint and nothing is done for several hours here, that is enough so that a jury might find deliberate indifference. That's really the question when it's this amount of time. And I apologize for not dealing with the Hayes case, Your Honor, but I believe that certainly that is enough time for action to be taken by the defendants. If I may just ask that I was going to say before I had to answer Judge Park's question, those statements that the district court dismissed of Defendant Godding as de minimis acts and didn't use the evidence to think about how that might relate to the proof of deliberate indifference, those reflect that the type of protection that Defendant Godding was trying to offer was not ---- fell short of the standard of the Eighth Amendment. That's not the type of protection that's required by the Eighth Amendment. Prepare yourself. Fight like a man, right? Learn to fight like a man. Please, Mr. Morgan's position is to ask that you reverse the motion for summary judgment, vacate the judgment, reinstate the pendent state law claims, and remand for further proceedings. Thank you, Your Honors. Thank you, Mr. Yoder. Thank you both. We're reserved.